### EDWARD M. CASWELL *vs.* HIRAM B. CROSS.

Suffolk.    March 17. — Sept. 9, 1876.    AMES & MORTON, JJ., absent.

One, who employs a firm of collecting agents, in response to an advertising card, in which they announce that they will treat his debtors "with delicacy, so as not to offend them, or with such severity as to show that no trifling is intended," giving no special instructions, authorizes them to use such means as they see fit to adopt, in the prosecution of his business for his benefit, and is responsible therefor.

TORT for an arrest and false imprisonment. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court on appeal, on an agreed statement of facts, in substance as follows :

The defendant employed J. E. Cupples & Co. to collect a bill in his favor against the plaintiff, amounting to twelve dollars and accrued interest. Cupples & Co. advertise and hold themselves out to the public as a "Law and Collection Bureau," and have their place of business on School Street, in Boston. They are not regularly admitted attorneys, but they sue out writs upon claims placed in their hands for collection, sometimes

appearing in court as the attorneys of record in their cases, and sometimes using the names of regularly admitted attorneys.

In all courts in the vicinity of Boston, where they are permitted to do so, they enter their own appearance only, and always retain the exclusive control and management of their cases in and out of court, whenever an attorney's name is entered of record. They use the name of a regularly admitted attorney for the mere purpose of complying with the rules of court. In addition to appearing in court in their own cases, they examine poor debtors arrested by them, and do the general business of regular attorneys, in making writs and declarations, levying and collecting executions, &c.

Upon the claim placed in their hands by the defendant they brought an action against the plaintiff in the Municipal Court of Boston, using the name of a regularly admitted attorney, and recovered judgment on September 1, 1874, on default, for the amount of $15.12 debt and $8.19 costs, and took out an execution in favor of the plaintiff on said judgment, which execution was duly returned in no part satisfied.

Cupples & Co. then brought another action upon said judgment in the Police Court of Charlestown, and recovered a new judgment, including the full amount of the prior judgment and costs. They then took out an execution on this last judgment, with the usual directions for the arrest of the defendant in said action; and one Perkins, who was a clerk in the employ of Cupples & Co., and who had the general management of their cases in and out of court, made an affidavit as required by law for the arrest of poor debtors, which affidavit was duly attached to said execution. Perkins then gave said execution to an officer with instructions to arrest the judgment debtor. The officer arrested him; he recognized with surety to take the oath for the relief of poor debtors, gave the required notice, submitted himself to be examined, was examined by Perkins in behalf of the judgment creditors, and was finally discharged from arrest, upon taking said oath.

The judgment upon which execution was issued, and upon which the plaintiff was thus arrested, was for less than twenty dollars, excluding the costs in that and the prior action; but this fact was unknown to the plaintiff or his attorney until after

the oath had been administered to him. Both judgments having been upon default and without his actual knowledge.

The defendant gave Cupples & Co. no special instruction as to the manner in which they were to proceed, or the proceedings they were to adopt in collecting said bill. He called upon them in answer to their advertising card sent to him, a copy of which is printed in the margin.* He had no knowledge of the manner in which they collected bills and conducted their business, except such as he derived from this advertisement, and he had no actual knowledge of any of the proceedings of Cupples & Co. and Perkins, in trying to collect his claims against the plaintiff, or in making said affidavit, or in causing the plaintiff to be arrested, until after the bringing of this suit. He left with them several other claims against other parties for collection, at the same time, Cupples & Co. agreeing with him to make no charge against him on any of his claims unless they were successful in making the collections.

Upon the foregoing facts, if the plaintiff was entitled to recover, a default was to be entered against the defendant, and the case stand for the assessment of damages only; otherwise, judgment for the defendant.

*P. H. Cooney*, for the plaintiff.

*C. W. Turner*, for the defendant.

LORD, J. It is not necessary in this case to consider whether the relation of attorney and client existed between Cupples & Co. and the defendant, nor whether the defendant understood

---

* " Office of 'The New England Collecting Agency' for the Special Collection of Physicians' Accounts. 3 School Street, Room 15. Boston, Mass., Dec. 1873. Sir : As the close of the year is now at hand when it is customary for books to be made up and accounts sent out, we would again direct your attention to our agency for the collection of physicians' accounts. We have made complete arrangements for systematically and promptly collecting all such, throughout the city and neighborhood. Every effort is made to trace parties who have moved, and most energetic steps are taken to compel reluctant and dilatory debtors to settle. Should you intrust us with your collections we shall take your instructions as to the manner in which you wish your debtors treated, whether with delicacy, so as not to offend them, or with such severity as to show that no trifling is intended. Our terms are ten per cent. commission on the amount we collect. Settlements made as often as wished. Yours obediently J. E. Cupples & Co."

Cupples & Co. to hold themselves out as attorneys at law. The card sent by them to the defendant, which he received and to which he responded, contains ample notice of the character of the firm and of the business pursued by them. They held themselves out as professional duns; a character quite well enough known. Their card contains full notice of the mode in which they did business. They announced that they would act under instructions; that they had modes of doing business, either with delicacy which could not offend, or with a severity which indicated that there was to be no trifling. We think any person who employs such agents with such knowledge on his part, giving no special instructions, authorizes the agents to use, and becomes responsible for injuries caused by the use of, such means as they see fit to adopt in the prosecution of his business for his benefit, whether those means be honorable and proper or whether resort is had to insolence and insult or to misuse or abuse of legal process. They are his servants to do his work in their own manner, though that manner may be unjustifiable or illegal. This view of the case renders it unnecessary to inquire whether the mere fact that the present defendant was the plaintiff in the proceedings against Caswell, and that the execution upon which Caswell was arrested was in his name and prosecuted for his benefit would be of itself sufficient to hold the defendant responsible for the illegal arrest and imprisonment of the plaintiff. Upon the agreed statement, therefore, the defendant is to be defaulted, and the case is to stand for

*Assessment of damages.*